ENTERED

SEP 2 3

TERESA L. DEPPNER, CLERK
U.S. District & Bankruptcy Courts
Southern District of West Virginia

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

JOHN L. ABSTEN,

      Plaintiff,

v.                                          Civil Action No.  3:04-0935

JO ANNE B. BARNHART,
Commissioner of Social Security,

      Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff John L. Absten appeals the Social Security Commissioner's (hereinafter "Commissioner") final decision denying his applications for disability insurance benefits (hereinafter "DIB") and for supplemental security income (hereinafter "SSI") based on disability, brought under 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

### I

The plaintiff filed his applications for DIB and SSI on February 15, 2002, alleging disability commencing May 29, 2001, as a consequence of a back injury and a right knee injury. Both applications were denied initially and again upon reconsideration.  At his request, an administrative hearing was held on October 8, 2003.  On July 13, 2003, an administrative law judge (hereinafter "ALJ") found that the plaintiff was not disabled.  He appealed the ALJ's decision to the Appeals Council.  On December 5, 2003, the Appeals Council remanded the

ALJ's decision for failing to give the plaintiff an opportunity to examine the report from B.J.

Kerbyson, D.O. and to comment on, object to or refute it by submitting other evidence,

requesting a supplemental hearing or, if warranted, cross-examining the author of the evidence.

A supplemental hearing was held on March 23, 2004, and it appears that medical records from

Young Choi, M.D. were admitted into evidence and made a part of the record subsequent to the

hearing. On May 26, 2004, the ALJ again found that the plaintiff was not disabled, and his

decision became the Commissioner's final decision when the Appeals Council denied plaintiff's

second request for review. Thereafter, the plaintiff filed this action seeking review of the

Commissioner's decision.

At the time of the ALJ's decision, the plaintiff was forty-five years of age, had obtained a

high school education and had work experience as a medical equipment home

delivery/technician, a hospital equipment maintenance worker and a construction worker. In his

decision, the ALJ determined from the objective medical evidence that the plaintiff suffered from

the following "severe" impairments[1] as defined by the social security regulations: "degenerative

disc arthritis of the lumbar spine and degenerative joint disease fo the right knee." (R. 17.) He

also determined that plaintiff's shoulder pain and left foot pain and swelling were not "severe"

impairments and that the plaintiff did not have an impairment or impairments which in

combination satisfied or equaled any of the impairments listed in Appendix 1, Subpart P,

Regulation No. 4. He further determined that the plaintiff had the following residual functional

capacity (hereinafter "RFC"):

---

[1] A medically determinable impairment or combination of impairments is severe if it
significantly limits an individual's physical or mental ability to do basic work activity. 20 C.F.R.
§§ 404.1521(a) and 416.921(a).

The claimant has the following residual functional capacity: to lift/carry a maximum of 20 pounds occasionally and 5-10 pounds frequently; may stand/walk around (be on feet) at least 4 hours in an 8-hour workday and 1 hour without interruption; may sit 4 hours in an 8-hour workday and 2 hours without interruption; may not push/pull with the lower extremities; may not perform sustained/repetitive overhead work; may not climb hills/slopes or work on uneven terrain; may not climb hills/slopes or work at unprotected heights; may only occasionally climb stairs/step/ramps; may only occasionally bend/stoop, twist, crouch/squat, kneel or crawl; may never perform prolonged kneeling, squatting or crouching; may not work in the vicinity of heavy moving machinery or otherwise be exposed to excessive floor vibrations; may not perform operations of mobile equipment or otherwise be exposed to jarring, jostling or jolting; may not perform operations of foot (pedal) controlled equipment (with the right lower extremity); may not be exposed to temperature extremes; and may not work in damp-humid conditions.

(R. 17.)  On the basis of this determination and plaintiff's age, education, and employment

background, and relying on Rule 202.21 of the medical-vocational guidelines[2] and the testimony

of a vocational expert (hereinafter "VE"), the ALJ found him not disabled.

Additional facts will be introduced as they relate to plaintiff's arguments for relief.

## II

Under the Social Security Act (hereinafter "Act"), the Court is required to uphold the

Commissioner's decision if the decision is supported by substantial evidence and adheres to

proper legal standards.  *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987); *Myers v. Califano*,

611 F.2d 980, 982 (4th Cir. 1980).  Substantial evidence is defined as "such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402

U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. of New York v. NLRB*, 305 U.S. 197, 229

(1938)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a

preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  The Court will not re-

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 2, Tbl. 2.

Page 3 of 18

weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner or his ALJ, *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990), and "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner or his ALJ]." *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). Accordingly, the issues before the Court are whether the ALJ's decision is supported by substantial evidence that plaintiff is not disabled within the meaning of the Act and whether the decision is based on the correct application of the relevant law. *Coffman*, 829 F.2d at 517.

According to the Act, an individual is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C.A. §§ 423(d)(1)(A), 1382c(a)(3)(A) (West Supp. 2000). The Commissioner has developed a five-step procedure for making this determination. The first step requires consideration of whether the claimant is engaged in substantial gainful activity. If so, the claimant is found not disabled. If not, the second step requires a finding of whether there is a "severe" impairment. If not, the claimant is found not disabled. If so, the third step calls for an analysis of whether the impairment(s) meets or equals one contained in the listing of impairments.[3] If so, the claimant is found disabled without further analysis. If not, the process continues to the fourth step where it is determined whether the claimant's impairment(s) prevents the performance of his or her past relevant work. If not, the claimant is found not disabled. If so, the burden of production shifts to the Commissioner for the

---

[3] 20 C.F.R. Pt. 404, Subpt. P, App. 1.

final step.[4]  In the fifth step, the Commissioner must demonstrate that the claimant can do other work.  If the Commissioner satisfies this burden, benefits are denied.  Otherwise, the claimant is found disabled, and benefits are awarded.  20 C.F.R. §§ 404.1520, 416.920.

In the case *sub judice*, both parties agree that the plaintiff has not engaged in any substantial gainful activity since his alleged onset date; he has severe impairments; he does not have an impairment or combination of impairments that satisfies a listing in Appendix 1, Subpart P, Regulation No. 4; and, he is unable perform his past relevant work.  They disagree, however, on whether his impairments prevent him from performing any work.  Hence, the plaintiff has appealed to this Court and seeks to have the Commissioner's decision reversed.

## III

The plaintiff has submitted three grounds in support of his motion for judgment on the pleadings.  He alleges that the ALJ improperly rejected the opinion of his treating physician, that the ALJ failed to properly evaluate his pain and credibility and that the ALJ failed to properly evaluate the combined impact of his impairments on his ability to perform any work.  The Commissioner, on the other hand, contends that the ALJ's decision is supported by substantial evidence and adheres to the law.  The Court will address plaintiff's grounds for judgment on the pleadings seriatim.

## A

Plaintiff's first argument for relief is that the ALJ failed to properly consider the opinion of his treating physician, Young Choi, M.D.  On February 20, 2003, Dr. Choi opined that the

---

[4]*Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981); *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

plaintiff was able to lift/carry 20 pounds, occasionally lift/carry 10 pounds and frequently lift/carry 5 pounds. In support of this assessment, Dr. Choi stated: "Pt. has a back & knee injury & due to these injuries his activity is highly limited. He is not able to push, pull lift or carry but a very small amount at a time." (R. 311.) With regard to standing/walking, Dr. Choi opined that the plaintiff was able to stand and/or walk approximately 4 hours in an 8-hour workday. In support of this opinion, Dr. Choi stated: "Mr. Absten has great difficulty & Pain with Standing & Walking. Most of the time he will lean against something to releive [sic] preasure [sic]." (R. 312.) With regard to sitting, Dr. Choi opined that the plaintiff was able to sit for approximately 4 hours in an 8-hour workday. In support of this opinion, Dr. Choi stated: "Sitting put [sic] stress on his back causing pain. Mr. Absten has no comfortable position that will accommodate him for very long periods of time." (R. 312.) With regard to postural activities, Dr. Choi opined that the plaintiff could occasionally balance, but never climb, stoop, crouch, kneel or crawl. In support of this opinion, Dr. Choi stated: "The knee injury does not allow patient to climb, crouch, kneel or crawl. He can occasionally balance on the left leg but after a while starts putting a strain on his back. The back injury also impair [sic] the climbing & stooping." (R. 312.) With regard to physical functions, Dr. Choi opined that plaintiff's injuries affected his ability to reach, handling, feeling and pushing/pulling. Dr. Choi further opined that pain may distract plaintiff's ability to see, hear and speak. In answer to the question about how the functions are affected, Dr. Choi stated: "Because of the back injury it cause pain & numbness with increased activity." (R. 313.) In answer to the question about the medical findings that support his assessment, Dr. Choi stated: "When asking the patient to perform task there is a lot of pain." (R. 313.) With regard to environmental restrictions, Dr. Choi opined that the plaintiff should not be exposed to heights,

moving machinery, temperature extremes, humidity and vibration. In answer to the question about how the restrictions affected the plaintiff's activities, Dr. Choi stated: "The patient's activities are affected greatly by change in weather strenuous activity, sudden movement, climbing, _____, pushing & pulling." (R. 313.)

The disability decision is reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). Moreover, an ALJ's determination as to the weight to be assigned to a medical opinion cannot be disturbed without some indication that the ALJ has "dredged up specious inconsistencies" or has failed to provide a good reason for the weight afforded a particular opinion. *Scivally v. Sullivan*, 966 F.2d 1070, 1076-77 (7th Cir. 1992), *see also* 20 C.F.R. §§ 404.1527(d), 416.927(d). In *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992), the Fourth Circuit affirmed that a treating physician's opinion on the issue of disability is not controlling. In *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996), the court stated that the regulations give a treating doctor's opinion controlling weight with respect to the nature and severity of the impairment if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. The court further stated: "[B]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*

When a treating doctor's opinion is not given controlling weight, however, the following factors should be used to determine the opinion's weight. First, the more evidence the physician presents to support his opinion, particularly medical signs and laboratory findings, the more

weight is given to the opinion. Well-reasoned explanations are also given more weight,[5] and the more consistent a treating doctor's opinion is with the record as a whole the more weight afforded to his opinion.[6] Finally, a specialist's opinion will be given more weight than that from a nonspecialist.[7]

The record contains the following medical evidence: On April 20, 1995, the plaintiff sought treatment from Donald M. Thaler, M.D. for pain in his back and right knee. Dr. Thaler noted: "Exam of back shows that there is loss of normal lumbar lordosis and definite list of the left [sic]  X-rays reveal some lumbar trophism with a large batwing deformity on the right side. Definite articulation and sclerosis on right side." (R. 200.) Dr. Thaler prescribed Voltaren and fitted the plaintiff with a lumbosacral support. Dr. Thaler further reported that plaintiff was able to work while undergoing treatment.

On July 5, 1995, the plaintiff returned to Dr. Thaler. Dr. Thaler reported:

He is better.  Still has some discomfort in his low back which he localizes primarily in the area of L5, S1.  His forward flexion is done relatively well.  His lateral flexion is done normally with only mild discomfort.  His Lesegue's sign is negative.  His deep tendon reflexes are physiologic.  Patient, I think, is improving to some extent. . . .

(R. 203.)

On August 7, 1995, Dr. Thaler reported:

He is basically improving.  He is working but, he still has a little discomfort to the right of his low lumbar region on certain movements such as twisting or lateral flexion to the left.  He denies any leg symptoms or numbness.  His back shows

---

[5]20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

[6]20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4).

[7]20 C.F.R.§§ 404.1527(d)(5), 416.927(d)(5).

normal forward flexion today. A little discomfort on lateral flexion to the left on
the right side. Lesegue's sign is negative. Deep tendon reflexes are physiologic.
Patient has been encouraged to carry out a home exercise program because he is
still having some mild residual symptomatology, . . . .

(R. 203.)

On September 11, 1995, Dr. Thaler reported:

John has experienced some increased difficulty over the past week and has had
recurrent list and been unable to stand straight. He states he has been doing his
exercises and wearing his back support. There is no radiation of pain into the hip
or down the legs. He does experience difficulty getting up and down. On
examination, he very definitely does have a list on forward flexion which is to the
left. Pain is localized primarily to the right lumbar flank area in the lower or just
above the iliac crest. There is no true splinting of his spine. His lateral flexion to
the left causes him to have some discomfort. Not too much discomfort on
deviation to the right. We are going to start him on some muscle relaxants today.
He is to continue with his Voltaren, have him get some physical therapy,
dyathermy, ultrasound at Pt Pleasant. . . .

(R. 203.)

On October 9, 1995, Dr. Thaler reported:

He persists in having some pain in his low back, occasionally sharp on the left
side. He still reports some occasional difficulty in his left leg. Examination today
shows that he has good and normal forward flexion, lateral flexion. His Lasegues'
sign is negative. His deep tendon reflexes are physiolgic and gait pattern appears
to be normal and no sensory disturbance. I think that the patient has done
relatively well. We have discussed the situation today. He talks about possibly
changing jobs. He may well have additional difficulty unless he uses good body
mechanics at all times. He is to continue with the exercise program and he does
relate that when he flexes his left leg up onto his chest and straightens it he gets a
popping in his back. This exercise probably ought to be diminished in its
frequency. . . .

(R. 203.)

On November 6, 1995, Dr. Thaler reported:

John continues to have pain which is localized to the back related to activity. He,
also, reports some continued discomfort in the right leg but no numbness. His

gait pattern appears to be normal today. His Lesegue's sign is negative. His deep tendon reflex is physiologic. Back motion appears to be without significant restriction. Basically, on physical examination, fairly normal. Patient was started on some Ultram today for when he has more pain. He is to continue with his Voltaren. . . .

(R. 201.)

On February 8, 1996, Dr. Thaler reported:

John is getting along relatively well, having only mild discomfort in his back now. He states he did experience some difficulty when he was on snow detail at the hospital. His back motion shows good forward flexion today without restriction. No apparent pain. Lateral flexion is done well. Gait pattern is normal. Deep tendon reflexes are physiologic. I think he is doing quite well. He is to continue with his Voltaren on an as needed basis. I would like to see him again in three months. At that time, I plan to discharge him.

(R. 201.)

April 24, 1996, Dr. Thaler reported:

6 days ago he developed an acute episode from which he continues to have acute problems. Without specific injury the patient states that he awoke and was drawn over to one side. He has had other minor acute flair ups but they have never been of any significants [sic]. The patient continues at work however, his work load has changed and he is doing more lifting evidently. The pain is localized to the low back and her [sic] reports some burning in the right anterior thigh. Sitting and standing definitely bothers him. On examination the patient shows a definite list to the left on forward flexion. His right lateral flexion is markedly restricted and his left lateral flexion is done well. There is splinting of the lumbar spine on forward flexion which is done to about 40 to 45 degrees. His Lasegues' sign is interpretted [sic] as being negative. His deep tendon reflexes are physiologic. This appears to be an acute muscle spasm in the low back. He would like to continue at work. We are going to start him on some Darvoct and Norgesic Forte. Hopefully, this will relieve the spasm. He is to use heat and gentle stretching exercises. He is to return to see me in about 10 days.

(R. 201.)

On September 20, 1996, the plaintiff underwent a physical examination by Saphir R. Mir,

M.D. at the request of the Workers' Compensation Fund. After examining the plaintiff, Dr. Mir

concluded the following:

> 1) This patient had history of a couple of injuries to lower back in 1994 and present injury. He was treated conservatively and continues to have some symptoms in his lower back. Also patient stated he has some pain following his injury in the popliteal area of right knee. On examination of back, patient had slight restriction of range of motion at lumbar spine with some tenderness in lower back. His knee had mild tenderness in popliteal area. Neurological status of lower extremity was within normal limits.
>
> > DIAGNOSIS: A) Lumbosacral strain
> > B) Strained posterior capsule and tendons, right knee
>
> 2) Patient has reached maximum degree of medical improvement from injury of 06-12-95 and is no longer disabled.
>
> 3) Patient needs periodic follow-up for symptomatic treatment.
>
> 4) Patient does not need functional capacity evaluation or vocational rehabilitation.
>
> 5) Using AMA Guidelines, Fourth Edition, 1993, this patient has 3% wholeman impairment from his lower back and 1% wholeman impairment from his right knee. Added together, he has 4% wholeman impairment from his injuries of 06-12-95. This impairment is nonprogressive.

(R. 208.)

On November 28, 2000, the plaintiff sought treatment from Dr. Choi for back and knee pain. The plaintiff reported that he had fallen while on a roof on June 12, 1995. He further reported that the pain had gotten worse and that he was not taking any medication. Upon examination, Dr. Choi found that his right knee was tender and that his range of motion was okay.

The plaintiff's right knee was also x-rayed on November 28, 2000. The x-ray revealed no fractures, osseous lesions or dislocations as well as no joint space effusion.

On December 7, 2000, the plaintiff returned to Dr. Choi and reported that medication had

not helped. Dr. Choi noted that plaintiff's x-ray of his right knee was negative. On March 27, 2001, the plaintiff underwent an MRI of his right knee. The test revealed a meniscus tear. On April 3, 2001, the plaintiff returned to Dr. Choi, who referred him to Arnold R. Penix, M.D. for treatment of the tear.

The plaintiff visited Dr. Penix and reported "posterior right knee pain associated with some popping, and occasional sensation of giving way" on April 19, 2001. (R. 216.) Upon examination, Dr. Penix found that his gait was normal, that his right knee had positive tenderness along the medial joint line and that there was no swelling or instability noted. Dr. Penix noted that an MRI of plaintiff's knee demonstrated a tear of the posterior horn and medial meniscus.

Dr. Penix operated on plaintiff's right knee on May 29, 2001. On June 6, 2001, the plaintiff followed up with Dr. Penix. The progress note indicates that the plaintiff was going well and that he was to begin physical therapy.

On August 8, 2001, the plaintiff returned to Dr. Penix, complaining of some popliteal pain. He also reported that he did not feel he could resume his regular job. The plaintiff returned to Dr. Choi on August 30, 2001, complaining of back pain with muscle spasms. He also reported that physical therapy was not helping and that he had right knee pain.

The plaintiff underwent an MRI of his lumbar spine on September 6, 2001. The test revealed no evidence of HNP or significant spinal stenosis. There was, however, a mild posterior bulging annulus at L3/4 and 4/5.

On March 5, 2002, the plaintiff was evaluated by Accordia Rehabilitation Services. The plaintiff reported that Dr Penix had informed him that he should find a new job, use Tylenol for pain and continue to do his home exercises.

Records from Huntington Physical Therapy from March 2002 showed that the plaintiff was working at a light physical demand level.  Mr. Gladwell recommended that the plaintiff continue with the physical therapy.

On May 17, 2002, a physical RFC assessment was completed by a State Agency physician.  After reviewing the medical evidence in the record, the physician opined that the plaintiff could occasionally lift and/or carry twenty pounds and frequently ten pounds, that he could stand and/or walk for about 6 hours in an 8-hour workday, that he could sit for about 6 hours in an 8-hour workday and that he had unlimited ability to push or pull.  The physician further opined that he could occasionally climb ramps, stairs, ladders, ropes and scaffolds; balance; stoop; kneel; crouch; and, crawl.  With regard to environmental hazards, the physician opined that he should avoid concentrated exposure to vibration.

The plaintiff was treated by Dr. Choi on June 13, 2002.  He reported that he was experiencing back and knee pain, but that his medication was helping.  The plaintiff returned to Dr. Choi on September 23, 2002.  He reported swelling in his right knee and pain in his lower back.  Dr. Choi prescribed Lortab.  The plaintiff again returned to Dr. Choi on February 10, 2003.  The plaintiff reported constant pain in both areas.  Dr. Chio again prescribed Lortab.

On April 16, 2003, the plaintiff underwent an orthopedic examination by B.J. Kerbyson, D.O. at the request of the State Agency.  Dr. Kerbyson observed that the plaintiff ambulated with a normal gait and without a handheld assistive device.  He further observed the plaintiff appeared to be "stable at station but exaggeratedly uncomfortable in the sitting and supine positions."  (R. 317.)  Upon examination, Dr. Kerbyson found the following:

> **SUMMARY:** The claimant is a 44-year-old male with complaints of low

back pain and right knee pain. Recent MRI of the knee or surgical records of the knee were not included for review today. On examination, the right knee was normal. Records included did indicate a lumbar spine x-ray in 1995 which indicated minimal degenerative changes.

Straight leg raise test was negative for radiculopathy. There is range of motion abnormalities of the lumbar spine as noted above. Deep tendon reflexes are brisk and the sensory and motor modalities are well preserved. There appears to be no evidence of weakness or nerve root compression. There is no evidence of upper motor neuron lesion. Grip strength and fine manipulation are well preserved bilaterally. The claimant did have a positive Waddell's[8] axial load test. The claimant did have exaggerated expression of discomfort throughout the examination.

(R. 319 (footnoted added).)

The plaintiff returned to Dr. Choi on July 24, 2003. He reported fluid in his back and knee. He also reported that the pain clinic had said to continue the Lortab. On January 13, 2004, the plaintiff returned to Dr. Choi, complaining of muscle spasms in his back. He also reported some knee pain. Dr. Choi prescribed Celebrex and Lortab.

Contrary to plaintiff's argument, the ALJ properly rejected the limitations outlined in Dr. Choi's opinion for the following reasons: First, Dr. Choi's progress notes indicate conservative treatment of plaintiff's back pain and conservative treatment of his right knee pain subsequent to the surgery. Second, the opinion is not well-reasoned and does not refers to objective medical evidence to support the physician's suggested limitations as required by the regulations. Instead,

---

[8]Waddell identified seven alleged symptoms which are inappropriate descriptions of disease and seven findings that are inappropriate responses to physical examination. The identified symptoms and findings are rare in patients with identified spinal pathology, but are common in patients without significant pathology. The seven symptoms are tail bone pain, whole leg pain, whole leg numbness, whole leg giving way, no pain-free spells, intolerance of treatments and emergency admissions to hospitals. The seven findings are superficial tenderness, non-anatomic tenderness, pain on axial loading, pain on simulated rotation, distraction straight leg raising, regional weakness and over reaction. Gunnar B.J. Anderson, M.D., Ph.D. and Thomas W. McNeill, M.D., *Lumbar Spine Syndromes*, 159-60 (1989).

the opinion appears to be based upon plaintiff's subjective complaints. Third, the other objective

medical evidence in the record - specifically in light of the findings of Dr. Kirbyson as well as the

2001 MRI report concerning the lumbar region of plaintiff's back and the opinion of State

Agency physician - indicates that he is not as restricted as outlined in Dr. Choi's opinion and that

while he suffers intermittent back and knee pain, he is able to perform light work. Finally, the

ALJ did not ignore Dr. Choi's opinion or the plaintiff's complaints because he did restrict the

plaintiff to light work with limitations on his standing and sitting. As Dr. Choi's opinion is

inconsistent with the other objective medical evidence in the record, and as it is not well-

reasoned or properly supported pursuant to the regulations, the Court holds that the ALJ's

rejection of the limitations as outlined in Dr. Chio's opinion is supported by substantial evidence.

**B**

Next, the plaintiff argues that substantial evidence does not support the ALJ's findings

concerning his pain and credibility.

The Fourth Circuit has developed the following standard for determining whether an

individual's pain is disabling. "[S]ubjective claims of pain must be supported by objective

medical evidence showing the existence of a medical impairment which could reasonably be

expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig v.

Chater*, 76 F.3d 585, 591 (4th Cir. 1996). Thus, in order for a "disability to be found, an

underlying medically determinable impairment resulting from some demonstrable abnormality

must be established." *Id.* at 592. Furthermore, "allegations of pain and other subjective

symptoms, without more, are insufficient." *Id.* "Pain is not disabling *per se*, and subjective

evidence of pain cannot take precedence over objective medical evidence or the lack thereof."

*Id.* (quoting *Parris v. Heckler*, 733 F.2d 324, 327 (4th Cir. 1984); *see also* 20 C.F.R. §§ 404.1528(a), 416.928(a) (stating that a claimant's "statements . . . alone . . . are not enough to establish that there is a physical or mental impairment").

Turning to the law on credibility, it is the ALJ's responsibility, not the court's, to weigh and resolve conflicts in the evidence. Courts are not allowed to substitute their judgment for that of the ALJ, provided that substantial evidence supports the decision. *Hays*, 907 F.2d at 1456. *See also Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985) (recognizing that the ALJ's assessment of claimant's pain level is entitled to great weight); *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (*per curiam*) (stating that the ALJ has a duty of explanation when making determinations about the credibility of a claimant's testimony).

As indicated above, the medical evidence does not corroborate plaintiff's claims, in the amount and degree, as alleged by him. Accordingly, the Court holds that substantial evidence supports the ALJ's finding that he is not disabled due to pain. The Court further holds that because the medical evidence is inconsistent with plaintiff's testimony substantial evidence supports the ALJ's finding concerning his credibility. *See Hays*, 907 F.2d at 1456. Finally, the Court notes that the ALJ did not ignore plaintiff's allegations of pain because the ALJ did restrict him to light work with a number of postural and environmental restrictions.

## C

Next, the plaintiff argues that the ALJ failed to properly consider the combined impact of his impairments on his ability to perform any work.

The Fourth Circuit has held that "Congress explicitly requires that 'the combined effect of all the individual's impairments' be considered, 'without regard to whether any such impairments

Page 16 of 18

if considered separately' would be sufficiently severe." *Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (quoting 42 U.S.C.A. § 432(d)(2)(c) (1982 and Supp. 1988)).

After reviewing the ALJ's decision and the testimony at the administrative hearing, the Court rejects plaintiff's contention. The ALJ's RFC finding as well as his hypothetical questions to the vocational expert set out all of the plaintiff's impairments that were supported by the objective medical evidence. The ALJ's RFC finding is extensive, and it takes into account plaintiff's back and right knee pain. The vocational expert, using those limits identified by the ALJ, testified that there were a significant number of jobs in the economy which plaintiff could perform. Thus, both in his findings and in soliciting the views of the vocational expert, the ALJ considered the combined effect of the plaintiff's impairments as established by the evidence. Therefore, the Court holds that there is substantial evidence in the record to support the ALJ's finding concerning the combined effect of plaintiff's impairments on his ability to perform work.

## IV

On the basis of the foregoing, it is **ORDERED** that the plaintiff's motion for judgment on the pleadings be **DENIED**, that the Commissioner's motion for judgment on the pleadings be granted and the Commissioner's decision be **AFFIRMED**. All matters in this case being concluded, it is **ORDERED** dismissed and retired from the Court's docket.

The Clerk is directed to mail a copy of this Memorandum Opinion and Order to all counsel of record.

ENTER:


ROBERT J. STAKER
Senior United States District Judge